UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIE LOYS SOUTHARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 5:13-cv-01870-JHE |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**[1]

Plaintiff Willie Loys Southard, Jr. ("Southard"), seeks review, pursuant to 42 U.S.C. §§ 405(g), 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB"). Southard timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). After careful consideration of the record, and for the reasons stated below, the decision is **REVERSED** and **REMANDED** to the Commissioner for further development, as set forth herein.

**I. Factual and Procedural History**

Southard was forty-one years old, having been born February 12, 1971, at the time of his hearing before the Administrative Law Judge ("ALJ"), on March 19, 2012. (Tr. 36, 39). Southard was unsure how far he went in school but thought he completed either sixth or seventh

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 11).

1

grade in special education classes. (Tr. 40). He previously worked as a rock crusher, a road construction shoveler, and a lumber handler which are all heavy exertion jobs, with the rock crusher being semi-skilled work and the shoveler and lumber handler being unskilled work. (Tr. 51).

Southard applied for DIB on June 14, 2010, alleging an initial onset date of August 21, 2006. (Tr. 114). Southard's application was denied on November 10, 2010 (tr. 57-59), and he requested a hearing before an ALJ. (Tr. 62). After the hearing, the ALJ denied Southard's claim on April 27, 2012. (Tr. 19-29). Southard sought review by the Appeals Council, but the Council denied his request on August 9, 2013. (Tr. 1-5). On that date, the ALJ's decision became the final decision on the Commissioner. Southard then initiated this action on October 8, 2013. (Doc. 1).

## II. Standard of Review[2]

The Court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether the proper legal standards were applied. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court must "scrutinize the record as a whole ... to determine if the decision reached is reasonable ... and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). This Court will determine that the ALJ's decision is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a

---

[2]The legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* The Court must uphold factual findings supported by substantial evidence. The ALJ's legal conclusions, however, are reviewed *de novo*, "because no presumption of validity attached to the [ALJ's] determination of the proper legal standards to be applied . . . ." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the Court finds an error in the ALJ's application of the law, or if the ALJ failed to provide the Court with sufficient reasoning for determining the proper legal analysis has been conducted, the ALJ's decision must be reversed. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To establish entitlement for a period of disability and DIB, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a physical or mental impairment which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The Commissioner must determine in sequence:

(1) whether the claimant is currently engaged in substantial gainful activity;

---

[3]The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, revised April 1, 2014.

(2)  whether the claimant's alleged impairment (or combination of impairments) is "severe";

(3) whether the claimant's severe impairment satisfies or medically equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1;

(4)  whether the claimant has the residual functional capacity to perform past relevant work; and

(5) whether the claimant can perform other work in the national economy given [his] residual functional capacity, age, education, and work experience.

*Frame v. Commissioner, Social Sec. Admin.,* 2015 WL 150733, *2 (11th Cir. 2015)[4] (quoting § 404.1520(a)(4)(i)-(v)).  If the claimant has satisfied steps one and two, he will automatically be found disabled at step three if he suffers from a listed impairment.  *See e.g., Dixon v. Astrue*, 312 Fed. App'x 226, 227 (11th Cir. 2009) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the claimant does not have a listed impairment but cannot perform his past work, the burden shifts to the Commissioner to show that the claimant can perform some other available job.  *Id.* at 227-228.  The Commissioner must further show that such work exists in the national economy.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

## IV. Findings of the Administrative Law Judge

After consideration of the record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Southard met the insured status requirement of the Social Security Act on December 31, 2011, and had not engaged in substantial gainful activity since his alleged onset date.  (Tr. 21).  At Step Two, the ALJ found that Southard suffered from the severe impairments of duodenitis, history of hemorrhoids, and mild intellectual disability.

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36–2.

4

(*Id.*)  The ALJ found no medical evidence to support the plaintiff's allegations of tendonitis. (*Id.*)  The ALJ found, at Step Three, that Southard had no impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 22).   The ALJ considered whether the evidence established that Southard met Listing 12.02 (Organic Mental Disorders) or 12.05 (Intellectual Disability)[5] but found 12.02 not met because of a lack of evidence of any chronic organic mental disorder of more than two years duration, and found 12.05 not met because of a lack of evidence to establish Southard's functioning prior to age 22.  (Tr. 22-23).

The ALJ next determined that Southard retained the residual functional capacity ("RFC") to perform a light range of work, including lifting and carrying 10 pounds frequently and 20 pounds occasionally, standing and walking for six hours, and sitting for six hours, limited by the need for a sit/stand option, only occasional postural, and simple 1, 2, or 3 step job tasks.  (Tr. 24). At Step Four, the ALJ ruled that Southard could not return to his past relevant work.  (Tr. 27).   The ALJ determined at Step Five that, based on Southard's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that Southard could perform.  (Tr. 28).  Therefore, the ALJ found Southard was not under a disability at any time through his date last insured, December 31, 2011.  (Tr. 29).

---

[5]On August 1, 2013, after the ALJ issued her decision, but prior to this appeal being filed, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." *See* 78 Fed. Reg. 46,499, 46,501 (codified at 20 C.F.R. pt. 404, subpt. P, app. 1).  This change was made because "the term 'mental retardation' has negative connotations," and "has become offensive to many people." *Id.* at 46,499.  The Social Security Administration stated that the change "does not affect the actual medical definition of the disorder or available programs or services." *Id*. at 46,500.  So while the ALJ, whose decision issued before the change took effect, and the parties use the old terminology, we follow the agency's new nomenclature.

5

### V. Analysis

This Court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986) ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Southard contends the ALJ erred in not evaluating the evidence of school records, submitted after the hearing but before the decision, and the Appeals Council erred in failing to remand to the ALJ for consideration of this evidence. (Doc. 12 at 5-9). Southard argues that, had the ALJ considered those records, he would have been found to meet Listing 12.05(C). (*Id.*) Despite Southard's citation to *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994), and his use of the "new and material evidence" standard, the school records were submitted to the ALJ before her decision and is not new evidence, (tr. 32); therefore, the "new and material evidence" standard applicable to new evidence before the Appeals Council is

6

irrelevant here.  The issues then are the usual ones:  did the ALJ use the proper legal standards and is there substantial evidence to support her findings?  *See Wilson*, 284 F.3d at 1221.  The Commissioner concedes the ALJ erred in her finding there was a lack of evidence regarding Southard's intellectual functioning prior to age 22 but contends the error was harmless and does not require remand because the ALJ properly found that Southard did not show deficits in adaptive functioning.  (Doc. 13 at 8 n.4).

To "meet" a listing at step three, the claimant must have an impairment that "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 404.1525(c)(3).  Listing 12.05 contains an introduction that includes the "diagnostic description for intellectual disability" and also "four sets of criteria" in paragraphs A through D.  *Id*. pt. 404, subpt. P, app. 1 § 12.00(A) (2014).  If the claimant's mental impairment "satisfies the diagnostic description . . . and any one of the four sets of criteria" in Listing 12.05, then the claimant's impairment meets the intellectual disability listing, and the claimant is presumed disabled.  *Id.*

"To meet listing 12.05 ("intellectual disability"), 'a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22.'"  *Frame v. Comm'r, Soc. Sec. Admin.*, No. 13-15347, 2015 WL 150733, at *2 (11th Cir. Jan. 13, 2015) (quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).  Such intellectual disability satisfies the severity requirement in paragraph C of Listing 12.05 when the claimant shows "she has both '[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.'"  *Id.*, at *2 (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.05(C).  In addition, "there is a rebuttable

presumption that a claimant manifested deficits in adaptive functioning before the age of 22 if the claimant established a valid IQ score between 60-70." *Grant v. Astrue*, 255 F. App'x 374, 375 (11th Cir. 2007) (citing *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001)).  However, "a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

Here, the ALJ did not find the IQ scores invalid but instead seems to have acknowledged that Southard meets the first element of the diagnostic criteria, (*see* tr. 27) ("[T]he claimant has mental limitations related to his mild [intellectual disability] . . . ."), and the severity requirements of Listing 12.05(C), (*see* tr. 23) ("In the present case, the claimant's 2010 testing resulted in IQ scores within the stated range for both [Paragraphs B and C], evidencing [intellectual disability] in conjunction with other functionally limiting impairments to fulfill the stated criteria."). However, the ALJ also found there was no evidence to support the required deficit in intellectual functioning before age 22 or to support the required deficit in adaptive functioning at all, (*id.*). The ALJ further argued that what evidence there was from after age 22 (*i.e.*, work history and a "somewhat wide range of activities of daily living") was "not reflective of having the deficits of adaptive functioning required under listing 12.05." (*Id.*).

The Commissioner acknowledges that, contrary to the ALJ's finding, there was evidence to support a finding of intellectual disability before age 22, noting both the school records submitted after the hearing and the presumption that one's intellectual functioning remains constant throughout life. (Doc. 13 at 8 n.4) (citing tr. 23, 26 and *Hodges*, 276 F.3d at 1268, respectively).  The Commissioner relies instead on the ALJ's finding Southard's adaptive functioning was too significant to meet Listing 12.05, asserting there is substantial evidence to

8

support such a finding. (Doc. 13 at 8 n.4). The ALJ, however, ultimately found Southard had the severe impairment of "mild [intellectual disability]." (Tr. 21, 22, & 26). Listing 12.05 defines "intellectual disability" as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R., Part 404, Subpart P, Appendix 1 § 12.05. "Mild intellectual disability" would presumably meet all of the requirements of the diagnostic criteria, including deficits of adaptive functioning.[2] Neither the ALJ nor the Commissioner explains this inconsistency.

Even disregarding that inconsistency, it is not clear Southard has the degree of adaptive functioning necessary to overcome the presumption of deficits associated with his low IQ scores. Unlike the DSM-IV, with which it shares many characteristics, Listing 12.05 does not require significant deficits in adaptive functioning, just that deficits of adaptive functioning exist and have manifested before age 22. *Black v. Astrue*, 678 F. Supp. 2d 1250, 1260 (N.D. Fla. 2010) (citing *Cammon v. Astrue*, No. CIV.A. 3:08-CV-0131-, 2009 WL 3245458, at *11 (N.D. Ga. Oct. 5, 2009, and 20 C.F.R., Part 404, Subpart P, Appendix 1 § 12.05). As another district court in the circuit has observed, "[t]he caselaw addressing the 'adaptive functioning' aspect of Listing 12.05C suggests that the adaptive functioning must be significantly inconsistent with the I.Q. score. An ability to do simple daily activities and simple jobs is not enough." *Monroe v. Astrue*, 726 F. Supp. 2d 1349, 1355 (N.D. Fla. 2010) (analyzing cases); *accord Popp v. Heckler*, 779 F.2d 1497 (11th Cir. 1986) (upholding a finding the claimant was not intellectually disabled despite a low IQ score where he had a two-year college degree and had worked in technical jobs,

---

[2] Unlike Listing 12.05, the DSM-IV-TR, to which the Commissioner cites, requires an even higher standard (*i.e.*, "*significant* deficits or impairments in adaptive functioning"). *Stutts v. Astrue*, 489 F. Supp. 2d 1291, 1293 (N.D. Ala. 2007) (emphasis added). The Commissioner asserts the lack of a diagnosis of intellectual disability is evidence supporting the ALJ's finding of adaptive functioning, (doc. 13 at 9-10), but does not explain how the ALJ's finding of mild intellectual disability is consistent with this.

9

including as an algebra teacher); *Perkins v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 870, 873 (11th Cir. 2014) (upholding ALJ's finding claimant was not disabled based, in part, on past skilled work, including managing others); *Reed v. Colvin*, No. 14-2112, 2015 WL 467939, at *2 (8th Cir. Feb. 5, 2015) ("Listing 12.05C assumes mildly mentally retarded individuals can work if their only impairment is mild mental retardation."); *Parris v. Colvin*, No. 1:13-CV-01307-JEO, 2014 WL 4264847, at *6-*7 (N.D. Ala. Aug. 26, 2014) (reversing the ALJ's finding the claimant was not intellectually disabled despite a low IQ score where claimant did simple chores but did not live alone and there was limited evidence to what degree he needed assistance to make purchases, manage his money, and obtain a driver's license); *Alday v. Astrue*, No. 5:08CV217-SPM/WCS, 2009 WL 347722, at *5 (N.D. Fla. Feb. 11, 2009) (holding a history of unskilled and semiskilled work with daily activity consisting of sweeping, walking grandchildren to school, doing laundry, taking care of a dog, and watching television, did not show the claimant had "exceeded the prognosis of [her IQ] scores through adaptive behavior).

The ALJ's basis for concluding Southard has shown significant adaptive functioning is Southard's history of "past successful work," consisting of unskilled and semiskilled hard labor, (tr. 27), and daily activities indicating Southard could dress himself, make the bed, help with household cleaning such as dusting and vacuuming, help take care of his children and pets, push mow the yard, fish, visit relatives, and drive by himself, (tr. 25). However, unskilled and semiskilled labor with no supervisory responsibilities is not inconsistent with evidence of intellectual disability. Simple daily activities such as dressing one's self, making the bed, dusting and vacuuming, mowing the yard, fishing, and visiting relatives are similarly not indicative of high adaptive functioning. Although the record includes evidence that Southard can drive by himself, (tr. 204), it also includes evidence that he acquired his driver's license, only on

the second or third try, by having the test read to him, (tr. 40-41), and that he does not go anywhere alone because he is "not good counting money or getting correct items," (tr. 137). He could count four quarters to a dollar but not six quarters, (tr. 213), and he does not pay bills, handle a savings account, or use a checkbook, (tr. 137). The school records, which the ALJ seems to have overlooked, reflect that Southard was in special education classes from at least 2nd grade until 7th grade when he quit school at age 15. (Tr. 187-198). His verbal, performance, and full scale IQ scores were repeatedly tested during that time period, and consistently found to be in the "mildly mentally handicapped" and "educable mentally retarded" range.[3] (Tr. 188-98).

A consultative examination with Dr. Mary Arnold, Psy.D., in 2010 had similar results, finding Southard to have a Full Scale IQ of 50, and opining the testing results were a valid estimate of his range of functioning. (Tr. 213). Although never finding the IQ score invalid, the ALJ determined Southard's adaptive functioning outpaced it. (Tr. 27) ("While he has IQ's in the mental retardation range, his adaptive functioning is much better."). The ALJ's basis for discounting Dr. Arnold's opinion was Dr. Arnold "did not have access to the claimant's work/earnings record when she made her opinions, she did not get to hear and consider the claimant's testimony that he can do some reading and simple addition, and she did not have access to Dr. Ismail's report wherein the claimant reports he drives by himself . . . ." (Tr. 27). The ALJ also noted Dr. Arnold's opinion her findings were consistent with Southard's education background was based solely on Southard's reported history instead of the school records not in evidence at the time. (Tr. 23). However, as previously noted, mild intellectual disability is not inconsistent with non-supervisory, unskilled and semiskilled labor; Dr. Arnold's own report

---

[3] Under the Regulations, IQ scores prior to age 16 and more than 2 years old are not valid for determining Southard's current functioning. *See* 20 C.F.R. Part 404, Subpart P, App. 1, Listing 112.00(D)(10) (stating IQ scores obtained before age 16 are valid only for two years).

acknowledges Southard's ability to do a little reading and simple mental addition, (tr. 212-13); and there is no reason to believe Dr. Arnold's opinion Southard is a "poorly educated, functionally illiterate man" with IQs in the intellectually disabled range would change based on knowledge he can drive, especially where he obtained his license by having it read to him, it took him two or three tries to do so, and he generally does not travel alone due to his other limitations, (tr. 40-41 & 137).  Furthermore, the school records in evidence at the time of the ALJ's decision are consistent with Dr. Arnold's findings of IQ scores in the intellectual-disability range.

Last, the ALJ acknowledged the mild intellectual disability "has resulted in . . . a moderate restriction of daily living activities, moderate difficulty with maintaining social functioning, and moderate difficulty with maintaining concentration, persistence and pace."  (Tr. 22).  Although these findings are not sufficient to meet the criteria of 12.05(D) or 12.02(B) to which they were directed, they do seem to indicate, along with the finding of mild intellectual disability, that the ALJ found substantial deficits of adaptive functioning to exist.

## VI. Conclusion

In light of the ALJ's inconsistent findings and the admitted errors regarding the school records and the presumptions to which Southard is entitled, the Court finds the ALJ's opinion is not supported by substantial evidence, and this case is due to be **REMANDED** to the Commissioner for further consideration of whether Southard is entitled to a finding of presumptive disability under Listing 12.05(C).  To this end, the Court notes it may be appropriate for the Commissioner to order a second consultive psychological examination in light of the ALJ's issues with Dr. Arnold's opinion.

DONE this 16th day of March 2015.

                                                      _____
                                                    **JOHN H. ENGLAND, III**
                                                    UNITED STATES MAGISTRATE JUDGE